**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>SOLUTION HAT, LLC, an Indiana limited liability company, dba Think Global; and Saurabh Seth, an individual,<br><br>Defendants. | Case No. 22-396 |

**COMPLAINT**

**INTRODUCTION**

1. Each year, hundreds of thousands of unwitting Americans fall victim to phony tech support schemes in which bad actors lure them into purchasing unnecessary "security services" for their computers by falsely claiming that the computers are infected with spyware or malware. The FBI's 2020 Internet Crime Report lists tech support fraud among its top cybercrime trends, and the FBI's Internet Crime Complaint Center IC3 reportedly received 15,421 complaints about tech support scams that cost victims more than $146 million in 2020 alone.

2. To combat this fraud, Microsoft Corporation ("Microsoft") employs sophisticated artificial intelligence and dedicated teams to identify individuals and companies engaged in fraudulent Microsoft-related tech support schemes. Microsoft then conducts test calls to further investigate companies believed to be offering phony tech support services.

3. Through these investigations, Microsoft discovered that Defendants have engaged in a pervasive and widespread tech support fraud scheme. To facilitate their scheme, Defendants

use pop up advertisements ("pop-ups") and full-page advertisements warning computer users of dire consequences to their computer systems and directing them to "call Microsoft" at the Defendants' toll-free number. The pop ups and advertisements prominently feature Microsoft's well-known Windows flag logo, among other Microsoft trademarks, lending credibility to the alarming but false statements they contain. When people, who are naturally confused and concerned by the advertisements, call the number purported to be associated with Microsoft technical support, Defendants convince them to pay for computer "support services" by falsely claiming that the victims' computers have serious security issues.

4. Microsoft brings this action to hold Defendants accountable for their actions and protect the public from the ongoing threat posed by Defendants' fraudulent scheme.

5. Microsoft has suffered actual damages in excess of $75,000 as a result of its investments in the investigation of this matter and bringing of this action, as well as damages to its brands and reputation.

6. This is an action for (i) deceptive telemarketing in violation of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6102(a)(2), 6104(a); Telemarketing Sales Rule, 16 C.F.R. § 310.3(a)(2)(iii) & (vii), and 16 C.F.R. § 310.3(a)(4); (ii) false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iii) trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114; (iv) false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (v) trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and (vi) cybersquatting in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

## PARTIES

7. Microsoft is a Washington corporation with its principal place of business in Redmond, Washington. Microsoft develops, markets, distributes, and licenses computer software, among other products and services, and it provides technical support for that software.

8. Defendant Solution Hat, LLC ("Solution Hat") is an Indiana limited liability company with its principal place of business in Indianapolis, Indiana. Solution Hat does business under the name Think Global. On information and belief, Solution Hat's sole member is Defendant Saurabh Seth.

9. Defendant Saurabh Seth is an individual who, on information and belief, resides in Mount Laurel, New Jersey.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over Microsoft's federal law claims brought under multiple sections of Title 15 of the United States Code, as set forth in the Causes of Action below. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because this action is between citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest and costs.

## FACTS

### A. The Global Reach of Technical Support Scams

11. According to a 2021 global survey, nearly seven out of ten Americans have encountered a technical support scam in the previous twelve months. Approximately ten percent of those respondents lost money from such scams.

12. In these scams, companies representing themselves to be technical service providers (hereinafter "the fake technicians") deceive computer users into believing their personal

computers and software are infected with dangerous viruses and sell unnecessary services to purportedly "clean" the systems and software. Typically, victims of this type of scam permit the fake technicians to remotely access to their computers, and the fake technicians identify various computer files they tell victims contain dangerous malware when the files are, in fact, benign. The fake technicians' misrepresentations that the victims' computers have been infected with viruses mislead the victims about the quality and security of Microsoft's computer software to convince them that they require support services.

13. One primary reason the perpetrators of technical support scams enjoy such success is that they create an impression that they represent or have an association with a well-known technology company such as Microsoft.

14. The techniques used by these companies include, but are not limited to, (a) making false representations that they are "from Microsoft" or "Windows"; (b) using Microsoft trademarks on their websites; and (c) using Microsoft's trade name in their advertising. These misrepresentations are designed to, and in fact do, cause customers to believe that the fake technicians' services are legitimate and offered by or affiliated with Microsoft.

15. In addition to the harm to Microsoft trademarks and Microsoft's reputation, victims of the scheme are deceived into obtaining services they do not require and may even unwittingly expose themselves to security risks associated with the installation of malware by the fake technicians.

**B. Microsoft's Intellectual Property**

16. Microsoft has duly and properly registered a number of trademarks and service marks in the United States Patent and Trademark Office on the Principal Register, including without limitation:

(a) "MICROSOFT," Service Mark Registration No. 1,689,468 for, *inter alia*, consulting and technical support services in the field of the design and use of computer programs, computers, computer hardware, and computers systems;

(b) "WINDOWS," Service Mark Registration No. 2,463,510 for, *inter alia*, computer services, namely providing technical support, information and consultation services in the fields of computer hardware, computer software and computer operating systems, all offered via computer networks and global communications networks;

(d) "MICROSOFT CORPORATE LOGO," Trademark and Service Mark Registration No. 4,560,827, for *inter alia*, providing technical support, consultation and resources in the fields of computer security, privacy and online safety.

(collectively, the "Microsoft Marks").

17. True and correct copies of the Registration Certificates for the Microsoft Marks are attached hereto as Exhibits 1-3.

**C. Defendants' Technical Support Scams**

18. Since its founding in the mid-1970s, Microsoft has made substantial investments in building goodwill with its billions of customers across the planet and established itself as a trusted provider of technology products and services, including software.

19. On information and belief, Defendants are engaged in a systematic and widespread technical support scam perpetrated on unwitting victims across the United States. Specifically, Defendants falsely represent themselves as Microsoft to mislead computer users into believing

their Microsoft software is infected with dangerous viruses or other malware. As a part of their scheme, Defendants use the Microsoft Marks, without Microsoft's consent, to falsely signify that they represent or are affiliated with Microsoft. By utilizing the goodwill that Microsoft has built with its customers, Defendants are more easily able to deceive people into believing that they require unnecessary technical support services to rectify nonexistent software issues.

20. Defendants attract victims through pop-ups and other advertisements that appear on users' computer screens while they are browsing webpages via the internet. These advertisements do not look like typical pop-up advertisements; instead, they look like warning messages generated by the users' operating systems that signify serious security problems. The pop-ups inform users that they can fix the issue only by calling a phone number belonging to Defendants, and that further harm may result should users ignore the messages.

21. Defendants do not know whether a computer has a security issue when they send the pop-up warning messages to computer users.

22. In the advertisements, which can lock the browser and prevent users from navigating away from the page, Defendants hold themselves out as Microsoft itself, providing the phone number 855-330-6038 by which the customer can purportedly contact "Microsoft," as shown in the partial screen capture featuring a pop-up below:




23. The pop-up in the screenshot above loaded in conjunction with an underlying website at the domain windowsclean.xyz. Like the pop-up, the webpage also featured Microsoft Marks and the phone number 855-330-6038; a screenshot of one portion of the website appears below:



A full screenshot of both advertisements as they appeared together is attached as **Exhibit 4.**

24. Microsoft did not authorize Defendants to use the Microsoft Marks in any manner, much less to use them in the Defendants' fraudulent and misleading advertisements.

25. Defendants' purpose in disseminating these advertisements is to induce customers to initiate telephone calls to Defendants so that Defendants can upsell purported computer security services to cure non-existent virus, malware, spyware, and other concocted computer security issues.

26. To investigate Defendants' fraudulent scheme, on March 4, 2020, Microsoft called the phone number presented in Defendants' pop-up advertisement: 855-330-6038. A person answered the call by stating, "Hello, this is Windows Support."

27. The agent first requested to remotely access the investigator's computer. The investigator followed the agent's instructions, giving the agent control of the investigator's computer. The investigator's computer was free of malware, viruses, or any other security issues at the time of the test call.

28. After gaining control of the investigator's computer, the investigator opened a command prompt and typed the dir command, which the agent stated performed a "scan." This command displays a list of a directory's files and subdirectories and does not test for viruses or malware. After running this command only, the agent pasted the following text into the command prompt: "Cssrss exe trojan found, network compromised, ip address unsecure."

29. The agent then opened the MSinfo tool, which gathers information about the computer and displays a comprehensive view of its hardware, system components, and software environment. The agent pointed at the "Kernal DMA Protection" status, and indicated that because

it was switched off, the investigator's computer "had no security protection." The Kernal DMA Protection feature protects computers against Direct Memory Access (DMA) attacks but does not generally protect computers against viruses or malware.

30. Next, the agent opened the Event Viewer tool, which displays the event logs for the machine. The event log for the investigator's computer had 546 event messages. The agent stated that all 546 event messages represented malware infections, which was false.

31. The agent then opened the command prompt and ran the netstat command, which displays the computer's active network connections. The agent stated that all foreign connections represented hackers that were connected to the investigator's computer and were attempting to steal the investigator's personal information. This statement, like the other statements made by the agent described above, were false and misrepresented the status of the investigator's computer as the computer had no security issues. Further, the command run by the agent could not determine whether "foreign connections" had interfered with the investigator's computer.

32. The agent then stated that to "fix" the computer would cost the investigator a one-time fee of $199, but that the investigator's computer would also need firewall security to prevent future issues. The agent then transferred the investigator to a technician.

33. The technician repeated the agent's statement about the investigator's need for firewall security. The technician reviewed several security "plans," and the investigator selected a "lifetime plan" that would cost $999. The technician stated that they would waive the $199 one-time fee and charge the investigator only $999.

34. The technician transferred the investigator back to the agent. The agent asked the investigator to enter payment information into a Notepad file. The agent then opened the webpage at mythinkglobal.com, where the agent logged into a payment client called "Universal Pay."

35. The agent stated that the transaction would be processed in two parts, with the first amounting to $499 and the second to $495. The agent stated that the merchant account would be named "Think Global."

36. The payment webpage stated that the gateway was powered by Universal Pay LLC but listed the merchant company name as "Solution Hat DBA Think Global."

37. Neither the agent nor the technician had authorization from Microsoft to represent any association with "Windows" or "Windows Support," an affiliation Defendants falsely represented in an attempt to mislead the customer into believing they represented Microsoft.

38. Over 100 customers have complained about this company through Microsoft's technical support scam reporting tool.

39. For example, a customer reported the following information regarding Think Global: "After receiving a pop up alerting there was suspicious activity[,] I called the number and was told they were from Microsoft. Gave them remote access while they ran a scan to detect suspicious activity. They told me my computer and internet were not adequately protected and I had 27 instances of hackers trying to gain access to my information. At this point they sold me a spyware package." This customer reported paying Think Global a total of $964.58 for this purported security package.

40. Another customer, who reported paying $200 to Solution Hat LLC, described their experience as follows: "First contact was a freeze on my computer. They said they were with Microsoft, and someone was trying to steal my cards and bank info. I believed them and they took over my computer and found viruses, wanted $500.00 and I said I couldn't afford it! So they charged me 200.00, now the[y] call every week and want more."

41. A third customer, who reportedly paid Think Global $249 for phony security services, wrote, "I asked if they were Microsoft provider and they said yes. I let them into my computer through TeamViewer. They said they were cleaning out and updating security. Four days later when I called both of the numbers there was an answer but asked me to stay on hold. After about 3 minutes they hung up. I tried it several times then realized it had to be a scam."

42. Defendants misrepresent themselves as Microsoft and use the Microsoft Marks, without license or permission, to add credibility to their fraudulent statements.

43. Defendants' fraudulent technical support scheme irreparably harms Microsoft, the Microsoft Marks, and the public, and if their illegal and infringing conduct is not enjoined, Defendants will continue to cause irreparable harm.

44. On information and belief, more than one of the telephone calls to Defendants in response to their fraudulent advertising described above were interstate telephone calls.

## CAUSES OF ACTION

## FIRST CLAIM

**Telemarketing and Consumer Fraud and Abuse Prevention Act – 15 U.S.C. §§ 6102(a)(2) and 6104(a); Telemarketing Sales Rule, 16 C.F.R. § 310.3**(a)(2)(iii) & (vii) and 16 C.F.R. § 310.3(a)(4)

45. Microsoft specifically realleges and incorporates by reference the allegations set forth above.

46. The Defendants engaged in a pattern and practice of deceptive telemarketing by (i) misrepresenting to customers that the computer security services Defendants offer for sale are necessary or effective to ameliorate customers' fictitious computer security issues, (ii) misrepresenting to customers Defendants' affiliation with or sponsorship by Microsoft, and (iii) making false or misleading statements to induce customers to pay for goods or services.

47. As a result of these acts, Defendants have violated the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6102(a)(2) and 6104(a); and Telemarketing Sales Rule, 16 C.F.R. § 310.3 (a)(2)(iii) & (vii) and 16 C.F.R. § 310.3(a)(4).

48. As a result of these acts by Defendants, Microsoft has been severely injured in its business and property and suffered actual damages in an amount exceeding $50,000. The injury to Microsoft is and continues to be immediate and irreparable.

49. Pursuant to 15 U.S.C. § 6104(b), Microsoft will serve the Federal Trade Commission with written notice of this action together with a copy of this Complaint immediately upon instituting the action.

**SECOND CLAIM**

**Trademark Infringement – 15 U.S.C. § 1114**

50. Microsoft specifically realleges and incorporates by reference the allegations set forth above.

51. Defendants' activities constitute infringement of the Microsoft Marks.

52. Defendants' unauthorized use of the Microsoft Marks to sell services unaffiliated and unassociated with Microsoft is likely to cause confusion, mistake, and/or deception as to the origin or source of the goods and services associated with the Microsoft Marks, to cause initial interest confusion and mislead the public into believing such goods and services originate from, are affiliated with, and/or are sponsored, authorized, approved, or sanctioned by Microsoft.

53. Defendants' unauthorized use of the Microsoft Marks, as alleged above, constitutes infringement of those Marks.

54. Defendants' practice of telling customers it represents Microsoft, even though it is unaffiliated and unassociated with Microsoft, in order to sell goods or services constitutes infringement of the Microsoft Marks.

55. At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, the Microsoft Marks.

56. As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117 (a) and (b). Alternatively, Microsoft is entitled to statutory damages under 15 U.S.C. § 1117(c).

57. Microsoft is further entitled to injunctive relief. Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Microsoft's trademarks and service marks are unique and valuable property that have no readily determinable market value; (b) Defendants' infringement constitutes harm to Microsoft's reputation and goodwill such that Microsoft could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials; and (d) Defendants' wrongful conduct, and the resulting harm to Microsoft, is continuing.

**<u>THIRD CLAIM</u>**

**False Advertising – 15 U.S.C. § 1125(a)**

58. Microsoft specifically realleges and incorporates by reference the allegations set forth above.

59. Defendants have a general sales practice in which they state that a customer's Microsoft software has viruses, malware, or file corruption, with no basis for making these statements.

60. Defendants make these statements in interstate commerce, including, as alleged above, via the internet to locations around the United States.

61. Defendants' statements are false or misleading statements of fact that disparage the quality and security of Microsoft's software.

62. Defendants' statements either have deceived or have the capacity to deceive a substantial segment of the public.

63. Defendants' statements are material in that they are likely to influence the customer's purchasing decision. The Defendants deprive Microsoft customers of important information when deciding whether to purchase technical repair services for their software, including whether they are who they represent themselves to be—namely, Microsoft—and whether the Microsoft customer's computer is infected such that it requires the purported services offered by Defendants at all.

64. These statements disparage the quality and security of Microsoft's software, and Microsoft has been and will be damaged by Defendants' wrongful conduct.

65. As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117.

66. Further, Microsoft is entitled to injunctive relief. Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Defendants' advertising, marketing, installation, or distribution of imitation visual designs constitutes harm to Microsoft such that Microsoft could not be made whole by any monetary award; and (b) Defendants' wrongful conduct, and the resulting damage to Microsoft, is continuing.

## FOURTH CLAIM

### False Designation of Origin and Unfair Competition – 15 U.S.C. § 1125(a)

67. Microsoft specifically realleges and incorporates by reference the allegations set forth above.

68. Microsoft advertises, markets, distributes, and licenses its software and services under the Microsoft Marks, and uses these trademarks and service marks to distinguish Microsoft's software and related components and services from the products or services of others in the same field or related fields.

69. Because of Microsoft's long, continuous, and exclusive use of the Microsoft Marks, they have come to mean, and are understood by customers, end users and the public to signify products and services of Microsoft.

70. Defendants' wrongful conduct includes the use of Microsoft's Marks in connection with their goods and services.

71. Defendants engaged in such wrongful conduct with the purpose of misleading or confusing customers and the public as to the origin, authenticity, or association of the goods and services advertised, marketed, installed, provided, offered, or distributed in connection with Microsoft's Marks, name, and imitation visual designs, and of trading on Microsoft's goodwill and business reputation. Defendants' conduct constitutes (a) false designation of origin, (b) false or misleading description, (c) false association, and (d) false or misleading representation that the imitation visual images originate from or are authorized by Microsoft, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

72. Defendants' wrongful conduct is likely to continue unless restrained and enjoined.

73. As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117.

74. Further, Microsoft is entitled to injunctive relief. Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Microsoft's

Marks are unique and valuable property which have no readily determinable market value; (b) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials; and (c) Defendants' wrongful conduct, and the resulting damage to Microsoft, is continuing.

**FIFTH CLAIM**

**Federal Trademark Dilution – 15 U.S.C. § 1125(c)**

75. Microsoft specifically realleges and incorporates by reference the allegations set forth above.

76. Since at least 1992, Microsoft has exclusively and continuously promoted and used the Microsoft service mark. As one of the world's most well-known technology companies, the Microsoft mark has become a famous and well-known symbol of Microsoft—well before any of the Defendants began using the mark in association with their goods or services unaffiliated with Microsoft through the Defendants' illegal use and infringement of the mark.

77. Since at least 2001, Microsoft has exclusively and continuously promoted and used the Windows service mark. As one of the most popular operating systems used by billions of customers around the world, the Windows mark has become a famous and well-known symbol of Microsoft—well before any of the Defendants began using the mark in association with their goods or services unaffiliated with Microsoft through the Defendants' illegal use and infringement of the mark.

78. Since 2012, Microsoft has exclusively and continuously promoted and used the Windows corporate logo (four square color version). As one of the most well-known companies in the world, the Windows corporate logo (four square color version) has become a famous and well-known symbol of Microsoft—well before any of the Defendants began using the mark in

association with their goods or services unaffiliated with Microsoft through the Defendants' illegal use and infringement of the mark.

79. The actions of the Defendants including, but not limited to, their unauthorized use of the Microsoft Marks in commerce to advertise, market, and sell fraudulent technical support services throughout the United States are likely to cause dilution of those marks by blurring and tarnishment in violation of 15 U.S.C. §1125(c).

80. As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117.

81. Further, Microsoft is entitled to injunctive relief. Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Microsoft's Marks, name, and visual designs are unique and valuable property which have no readily determinable market value; (b) Defendants' advertising, marketing, installation, or distribution of imitation visual designs constitutes harm to Microsoft such that Microsoft could not be made whole by any monetary award; and (c) Defendants' wrongful conduct, and the resulting damage to Microsoft, is continuing.

## SIXTH CLAIM

### Cybersquatting – 15 U.S.C. § 1125(d)

82. Microsoft specifically realleges and incorporates by reference the allegations set forth above.

83. Since 1985, Microsoft has exclusively and continuously promoted and used the Windows trademark. As one of the most popular operating systems used by billions of customers around the world, the Windows mark has become a famous and well-known symbol of Microsoft—well before any of the Defendants began using the mark in association with their goods

or services unaffiliated with Microsoft through the Defendants' illegal use and infringement of the mark.

84. Defendants used the domain windowsclean.xyz with a bad faith intent to profit from the Microsoft Marks based on a number of factors, including the fact that the domain was used in furtherance of a scheme to defraud customers by deceiving them into believing Defendants are affiliated with Microsoft.

85. The domain windowsclean.xyz is confusingly similar to or dilutive of the Microsoft Marks.

86. Microsoft is entitled to actual damages under 15 U.S.C. § 1117(a), or in the alternative, minimum statutory damages under 15 U.S.C. § 1125(d)(1).

87. Microsoft is entitled to have ownership of the domain windowsclean.xyz transferred to it, or in the alternative at a minimum to have this domain forfeited or cancelled.

88. Microsoft is further entitled to injunctive relief. In addition to the significant harm that Defendants have caused innocent victims, Defendants' acts have caused irreparable injury to Microsoft. An award of monetary damages cannot fully compensate Microsoft for its injuries, and Microsoft lacks an adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Microsoft respectfully asks this Court to enter judgment against Defendants and against each of their directors, principals, officers, agents, representatives, employees, attorneys, subsidiaries, parents, affiliates, successors and assigns, and all persons in active concert or participation with them, granting the following relief:

A. The entry of judgment in Microsoft's favor on all claims.

B. A permanent injunction restraining and enjoining Defendants, their directors, principals, officers, agents, representatives, employees, attorneys, subsidiaries, parents, affiliates, successors and assigns, and all others in active concert or participation with it, from:

(i) Any infringing use of Microsoft's registered trademarks, including the trademarks identified above, in connection with the marketing, promotion, advertising, or sale of any goods or service;

(ii) Directly or indirectly engaging in false advertising or promotions regarding the quality or security of Microsoft software;

(iii) Making or inducing others to make any false, misleading or deceptive statement of fact, or representation of fact in connection with the promotion, advertisement, or sale of goods or services related to Microsoft software;

(iv) Using any false designation of origin or false or misleading description or false or misleading representation that can or is likely to cause confusion, mistake, or deceive any party about the affiliation, connection or association of software, software components, or services with Microsoft, when such is not true in fact; and

(v) Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed above.

C. An order requiring Defendants to provide Microsoft a full and complete accounting of all gross and net proceeds earned from victims, including an identification of those victims;

D. An award of damages including all general, special, actual, and statutory damages which Microsoft has sustained, or will sustain, as a consequence of Defendants' unlawful acts, and that such damages be enhanced, doubled, or trebled as provided for by 15 U.S.C. § 1117(b).

E. A finding that this case is exceptional and an award to Microsoft of its reasonable attorney fees and costs as provided for by 15 U.S.C. § 1117 or otherwise provided by law.

F. Such other relief that Microsoft is entitled to under law, and any other and further relief as this Court or a jury may deem just and equitable.

DATED this 25th day of February, 2022.

Respectfully submitted,

BARNES & THORNBURG LLP

*/s/Jeff M. Barron*
Jeff M. Barron
11 South Meridian Street
Indianapolis, IN 46204-3535
317-236-1313 (Telephone)
317-231-7433 (Facsimile)
jeff.barron@btlaw.com

DAVIS WRIGHT TREMAINE LLP
Bonnie MacNaughton (*pro hac forthcoming*)
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
(206) 757-3150 (Telephone)
(206) 757-7700 (Facsimile)
bonniemacnaughton@dwt.com

Meagan Himes (*pro hac forthcoming*)
1300 SW Fifth Avenue, Suite 2400
Portland, Oregon 97210
(503) 241-2300 (Telephone)
(503) 778-5299 (Facsimile)
meaganhimes@dwt.com

**ATTORNEYS FOR PLAINTIFF MICROSOFT CORPORATION**